# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | | |
|---|---|---|
| ELEANOR M. JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:20-cv-00044-LSC |
| | ) | |
| BESSEMER BOARD OF | ) | |
| EDUCATION & DR. KEITH A. | ) | |
| STEWART, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF OPINION

Plaintiff Eleanor M. Jones ("Jones") brings this age discrimination claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, against Defendants Bessemer Board of Education (the "Board") and Dr. Keith A. Stewart ("Dr. Stewart"), the Board Superintendent (collectively "Defendants"). Before the Court is Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a viable claim for age discrimination. (*See* Doc. 7.) The motion is fully briefed and ripe for decision. For the reasons stated below, Defendants' motion to dismiss is due to be granted in part and denied in part.

I. **BACKGROUND**[1]

Jones, a 56-year-old female, has been employed by the Board since August 1998 in various capacities, including her current role as a business teacher. (Doc. 1 at 4.) In May 2018, she applied for the position of Work Force Coordinator, as did Reba Caffee, a cosmetology teacher at the time of the vacancy who Jones believes to be under the age of 40 with less than 8 years of experience. (*Id.*) After receiving a complaint from Jones that she overheard the interviewing supervisor guaranteeing the Work Force Coordinator job to Ms. Caffee, Dr. Stewart and the Board decided to re-interview the applicants for the position, including Jones and Ms. Caffee. (*Id.*) After the second round of interviews, Jones scored higher than Ms. Caffee, but Ms. Caffee was hired. (*Id.*)

Jones timely filed written charges with the Equal Employment Opportunity Commission ("EEOC"). (Doc. 1 at 3.) By notice dated June 25, 2019, Jones was advised by the EEOC that she was entitled to institute a civil action in the appropriate court within 90 days of receipt of said notice. (*Id.*) That 90-day period would have lapsed on September 23, 2019. On November 22, 2019, Jones and the Board entered

---

[1] In evaluating a motion to dismiss, this Court "accept[s] the allegations in the complaint as true and construe[s] the facts in the light most favorable to the plaintiff." *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012). Therefore, the following facts are taken from Jones's complaint, and the Court makes no ruling on their veracity.

into the "Tolling Agreement for Statute of Limitations" that purports to retroactively toll the 90-day statute of limitations for Jones to file suit from September 23, 2019, until midnight on January 10, 2020. (Doc. 1-2 at 1.)

Jones filed this action on January 10, 2020, alleging that the Board and Dr. Stewart discriminated against her on the basis of age when they failed to promote her to the position of Work Force Coordinator in favor of a less qualified, younger applicant. (*See* Doc. 1.) Jones sued Dr. Stewart in both his official and individual capacities. The Board and Dr. Stewart moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 7 at 1.) Dr. Stewart claims there are no allegations that support a viable claim against him. (*Id.* at 2.) The Board claims that all claims contained in the complaint are time-barred because the Jones missed the statute of limitations, notwithstanding the Tolling Agreement. (*Id.* at 3.)

On March 31, 2020, this Court directed the parties to submit briefs addressing the impact of the Tolling Agreement's conflicting language on the Defendants' statute of limitations defense. (*See* Doc. 15.) Dr. Stewart and Jones each submitted supplemental briefs (*see* docs. 18 & 19). The Board, however, did not submit a supplemental brief.

**II.    STANDARD**

In general, a complaint must present "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To withstand a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Lord Abbett Mun. Income Fund, Inc. v. Tyson*, 671 F.3d 1203, 1207 (11th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The plaintiff need not put forth "detailed factual allegations" in support of the claim, but there must be enough to "allow[] the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 555 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "This necessarily requires that a plaintiff include factual allegations for each essential element of his or her claim." *GeorgiaCarry.Org, Inc., v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012).

In evaluating the sufficiency of a complaint, this Court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Next, this Court "assume[s] the veracity" of well-pleaded, factual allegations to "determine whether they plausibly give rise to an entitlement to relief." *Id.* Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Id.* at 678. Finally, only the complaint itself and any attachments thereto

may be considered, even when the parties attempt to present additional evidence. *See Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1168 (11th Cir. 2014); *see also* Fed. R. Civ. P. 12(d).

### III. DISCUSSION

#### A. Dr. Stewart

Jones sues Dr. Stewart in both his individual and official capacities. The Eleventh Circuit has held there is no individual liability under either the ADEA or Title VII. *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991); *see also Smith v. Lomax*, 45 F.3d 402, 403 n.4 (11th Cir. 1995). Additionally, official capacity suits represent "another way of pleading an action against an entity of which an [official] is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). As the Eleventh Circuit has explained, official capacity suits are the "functional equivalent" of claims against the entity that employs the official and, therefore, no longer necessary because the entity can be sued directly. *Busby*, 931 F.2d at 776. The Board is an agency of the State of Alabama. *See Enterprise City Bd. of Educ. v. Miller*, 348 So. 2d 782, 783 (Ala. 1977) ("[City boards of education and county school boards] are agencies of the state . . . ."). "[W]hen a suit is filed against both a governmental entity and the entity's employees in their official capacity, a court may dismiss the individual

defendants in their official capacities as 'redundant and possibly confusing to the jury.'" *Underwood v. Boisot*, 7:07-CV-01228-LSC, 2008 WL 11422055, at *4 (N.D. Ala. Mar. 4, 2008) (quoting *Busby*, 931 F.2d at 776) (recognizing that having as defendants both the city and its officers sued in their official capacities would be redundant and therefore dismissing the officers).

The individual capacity claim against Dr. Stewart should be dismissed because there is no individual liability under either the ADEA or Title VII. *See Busby*, 931 F.2d at 772. Additionally, the official capacity claim should be dismissed as "redundant" of the claims against the Board and "possibly confusing to the jury." *See Underwood*, 2008 WL 11422055, at *4; *see also Busby*, 931 F.3d at 776. Finally, the claims against Dr. Stewart appear to be time-barred, and it does not appear that the Tolling Agreement would operate to toll the applicable statute of limitations with respect to him. It is undisputed that the Agreement was entered into between Jones's counsel and then-counsel for the Board. (Doc. 18 at 2.) However, there is no reference to Dr. Stewart in the Agreement, and Dr. Stewart did not sign or authorize anyone to sign the Agreement on his behalf. (*Id.*) There is no allegation that Dr. Stewart or his counsel were involved in any way in the execution of the Agreement. (*Id.*)

In sum, the Board is a Defendant; there is no individual liability under the ADEA or Title VII; and Dr. Stewart is not named in, did not sign, and was not involved in the execution of the Tolling Agreement. Therefore, the claims against Dr. Stewart are due to be dismissed.

### B. Bessemer Board of Education

The Board argues for dismissal on the grounds that Jones's claim is barred by the statute of limitations, and it insists that the Tolling Agreement did not waive or toll the statute of limitations due to the conflicting language in the agreement. (*See* Doc. 7.) Jones claims the limitations period was both equitably tolled and tolled by the parties' Agreement. The Supreme Court has held that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). Therefore, this Court must address whether equitable tolling or waiver apply.

Equitable tolling is an extraordinary remedy which is typically applied sparingly. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). Equitable tolling is allowed "where the claimant . . . has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Id.* "Equitable tolling has also

been followed where the court led the plaintiff to believe she had done all that was required of her." *Browning v. AT&T Paradyne*, 120 F.3d 222, 227 (11th Cir. 1997). Further, equitable tolling is permitted "when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." *Sandvik v. United States*, 177 F.3d 1269, 1270–71 (11th Cir. 1999). The Supreme Court has "generally been much less forgiving in late filings where the claimant failed to exercise due diligence in preserving his legal rights." *Irwin*, 498 U.S. at 96. Finally, "the burden is on the plaintiff to show that equitable tolling is warranted." *Justice v. United States*, 6 F.3d 1474, 1479 (11th Cir. 1993).

Jones claims the statute of limitations should be equitably tolled because she retained legal counsel, timely filed her EEOC charge, and obtained a tolling agreement through her legal counsel, who engaged the Board in settlement discussions. (Doc. 11 at 5.) While undisputed, these facts fail to show that Jones was "induced or tricked" by the Board, and there is no allegation that the Court led Jones to believe that she had done all that was required of her. Additionally, Jones has raised no "extraordinary circumstances" that were "unavoidable." Jones also has not shown that she was unaware of the 90-day requirement for filing suit, and she entered into the Tolling Agreement nearly 60 days after the deadline passed. Therefore, the Court concludes that equitable tolling does not apply.

Turning to waiver, the parties entered into the Tolling Agreement on November 22, 2019, that purports to retroactively toll the statute of limitations from September 23, 2019, until January 10, 2020. (Doc. 1-2 at 1.) The Tolling Agreement states that it "toll[s] the running of the applicable limitations period . . . for any potential claims and causes of action against . . . [the Board] which may be alleged by [Jones] to arise out of her employment and could be asserted as of September 23, 2019. This agreement shall be in effect until January 10, 2020 . . . ." (*Id.*) It then says, "The terms, conditions and subject matter of this Agreement shall not in any way affect the applicability of any legal defenses which may be available to . . . [the Board] as a result of Claimant not having filed suit prior to September 23, 2019." (*Id.*) It goes on to say, "The purpose . . . is to extend to the parties a grace period within which they . . . may attempt pre-suit negotiations and/or mediation during pendency of this Agreement." (*Id.*) Finally, the Tolling Agreement says, "In the event that the applicable limitations periods . . . have not already lapsed for filing suit in this matter, such limitations period or periods shall only be tolled during the period during which this Agreement shall be in effect . . . ." (*Id.*)

The parties disagree about the effect of the Tolling Agreement, and this Court must determine if the Agreement in fact waives the Board's statute of limitations defense for the relevant time period. "In a contractual dispute, Alabama law . . . first

look[s] to the contract to determine whether the parties have specified a particular sovereign's law to govern." *Stovall v. Universal Constr. Co.*, 893 So. 2d 1090, 1102 (Ala. 2004). Absent "such a contractual specification," Alabama courts follow "the principle of *lex loci contractus*, applying the law of the state where the contract was formed." *Id.* The contract did not specify a specific sovereign's law to govern but the contract was formed in Alabama; therefore, Alabama state law will apply.

Traditional principles make contract interpretation a question of law, decided by reading the words of a contract in the context of the entire contract and construing the contract to effectuate the parties' intent. *Faez v. Wells Fargo Bank, N.A.*, 745 F.3d 1098, 1004 (11th Cir. 2014). When interpreting a contract under Alabama law, the court first looks to the plain language of the contract and determines whether that language is ambiguous. *Pate Flagship, LLC v. Cypress Equities Se., LLC*, 88 F. Supp. 3d 1271, 1276 (N.D. Ala. 2015). Whether a contract is ambiguous is a question of law for the court to decide. *FabArc Steel Supply, Inc. v. Composite Constr. Sys., Inc.*, 914 So. 2d 344, 357 (Ala. 2005). "A contractual provision is ambiguous if it is reasonably susceptible of more than one meaning." *Id.* Further, a "patent ambiguity" is one "that is apparent upon the face of the instrument, arising by reason of inconsistency or uncertainty in the language employed in the contract." *Brown v. Butts*, 214 So.3d 1181, 1188 (Ala. Civ. App. 2016) (citation omitted).

The Tolling Agreement here presents a patent ambiguity. It begins by stating that it "toll[s] the running of the applicable limitations period" for any claims arising out of Jones's employment and providing the dates it is in effect—September 23, 2019, to January 10, 2020. But then it states that it does not "in *any way* affect the applicability of *any* legal defenses" available to the Board as a result of Jones not filing suit before September 23, 2019. (Doc. 1-2 at 1 (emphasis added).) A reasonable interpretation of the latter provision is that "any legal defenses" includes a statute of limitations defense that would be available to the Board after September 23, 2019. However, the Agreement then says that its purpose is to provide a grace period for "pre-suit negotiations," which only makes sense if the limitations period were tolled. Finally, the Agreement includes language that it would be in effect only if the limitations period had not already expired. Accordingly, this Court must look to additional contract interpretation principles to resolve the ambiguity.

When an agreement is ambiguous, the court "must employ established rules of contract construction to resolve the ambiguity found in the inartfully drafted document." *Voyager Life Ins. Co. v. Whitson*, 703 So. 2d 944, 948 (Ala. 1997). Alabama courts "have not favored the destruction of contracts on the grounds that they are ambiguous, uncertain, or incomplete, and will, if feasible, so construe a contract as to carry into effect the reasonable intention of the contracting parties if

that can be ascertained." *Gardens at Glenlakes Prop. Owners Ass'n, Inc. v. Baldwin Cty. Sewer Serv., LLC*, 225 So. 3d 47, 54 (Ala. 2016) (internal quotation marks, citations, and brackets omitted). Finally, when the examination is limited to the four corners of the agreement itself, "the first of two conflicting provisions prevails over the second provision," and "[a]ny inconsistencies between clauses or conditions that cannot be reconciled must be resolved in favor of the first clause." *Voyager*, 703 So. 2d at 949.

The title of the Agreement, "Tolling Agreement for Statute of Limitations," and the language of the first full paragraph—that "this instrument . . . toll[s] the running of the applicable limitations period" for any claims arising out of Jones's employment and such tolling is in effect from September 23, 2019, to January 10, 2020—suggests that the parties' intended to retroactively toll the statute of limitations for that period. Additionally, the language stating the purpose of the Agreement—to provide a grace period for "pre-suit negotiations"—reinforces that same intent. The Agreement becomes ambiguous when it says it does not apply to "any legal defenses" that were available as a result of Jones not filing suit prior to September 23, 2019. Further ambiguity is introduced by the language that the Agreement will be in effect only if the limitations period had not already expired. However, despite this conflicting language, the parties have provided no other

reason for entering into the Agreement than to toll the limitations period to allow Jones until January 10, 2020, to file suit, leading this Court to conclude that the intent of the parties was to waive the Board's statute of limitations defense until January 10, 2020. Finally, the first provision, which contains the language Jones relies upon to uphold the Agreement, controls and prevails over the conflicting provisions that follow. *See Voyager*, 703 So. 2d at 949.

The Court has also reviewed case law interpreting tolling agreements. The Eleventh Circuit has examined an agreement, like the present one, that purported to toll the relevant statute of limitations. *See Pac. Harbor Capital, Inc. v. Barnett Bank, N.A.*, 252 F.3d 1246 (11th Cir. 2001). However, that agreement sought to toll the statute of limitations from the time the agreement was entered, by which time the limitations period had already expired. In *Pacific Harbor*, the parties entered into an agreement on December 9, 1996, that stated, "if any applicable statute of limitations had not expired by December 9, 1996, it would be tolled until March 31, 1997." *Id.* at 1250. The applicable statute of limitations barred a suit after October 1, 1994. *Id.* at 1251. The court held that the tolling agreement executed by the parties was ineffective because the relevant statute of limitations would have run by the time it was made, and it only sought to toll the limitations period from the time the agreement was entered. *Id.*

Two district courts in other circuits, however, have examined agreements that, like the Agreement here, contained language aiming to retroactively toll the statute of limitations and directly distinguished them from the agreement in *Pacific Harbor*. *See SPPI-Somersville, Inc. v. TRC Companies, Inc.*, Nos. C 04-2648 SI, 07-5824 SI, 2009 WL 2390347 (N.D. Cal. 2009); *S.E.C. v. DiBella*, 409 F. Supp. 2d 122 (D. Conn. 2006). In *DiBella*, the parties entered into an agreement on December 20, 2003, to retroactively toll the limitations period that had expired on November 30, 2003. *DiBella*, 409 F. Supp. 2d at 129. The language of the agreement made clear that the parties intended to toll "any statute of limitations applicable to the proceedings or any other action . . . brought by or on behalf of the Commission . . . arising out of the investigation as of October 24, 2003." *Id.* The court distinguished the agreement before it from the agreement in *Pacific Harbor*, reasoning that in *Pacific Harbor*, "the parties only agreed to toll the statute for claims that had not expired as of December 9, 1996—the date they entered into the agreement—and the underlying claims had in fact expired before December 9, 1996." *Id.* at 128. The *DiBella* court held that the agreement before it tolled the statute of limitations because the claims had not expired as of the date specified in the agreement. *Id.* at 129. Further, the court could "find no reason not to accept its terms as broadly as it

was written" and concluded that "the Defendants . . . waived their right to raise the statute of limitations defense." *Id.*

In *SPPI-Somersville*, the parties entered into an agreement on June 29, 2004, that, instead of tolling all claims from the date the agreement was executed, purported to "toll all claims from the date of discovery" until November 15, 2007. *SPPI-Somersville*, 2009 WL 2390347, at *5. The date of discovery "was June 18, 2001, at the latest"; accordingly, the three-year limitations period would have otherwise expired on June 18, 2004. *Id.* at *6. However, the court rejected the argument that the agreement was ineffective because the limitations period had already expired when the agreement was executed. *Id.* Instead, the court held that the agreement tolled the statute of limitations on otherwise expired claims because it specified that the limitations period was tolled as of an earlier date, not the date of the agreement. *See id.*; *see also Delano v. Abbott Labs.*, 908 F. Supp. 2d 888, 895 (W.D. Tenn. 2012) (explaining and agreeing with the reasoning in *SPPI-Somersville* to enforce the tolling agreement). The court also found there was no information in *Pacific Harbor* about the beginning date of the tolling agreement, and thus that case did not assist in its ruling. *SPPI-Somersville*, 2009 WL 2390347, at *11 n.14.

Jones received a right-to-sue letter on June 25, 2019, and was advised she had 90 days to file her complaint. (Doc. 1 at 3.) Thus, the 90-day deadline expired on

September 23, 2019. The parties entered into the Tolling Agreement on November 22, 2019, which states in relevant part: "The tolling provision of this Agreement is effective prospectively only, from the date of September 23, 2019. This Agreement shall be in effect until January 10, 2020 . . . ." (Doc. 1-2 at 9.) Unlike in *Pacific Harbor*, where the agreement attempted to toll the limitations period from the time it was signed—when the limitations period had already expired—this Agreement attempts to retroactively toll the limitations period from a time when it was active. Therefore, because the present case presents a different type of agreement, the holding in *Pacific Harbor* is not dispositive.

While not binding on this Court, the holdings in *DiBella* and *SPPI-Somersville* are persuasive and applicable to the present case. Like the agreements in *DiBella* and *SPPI-Somersville* that each specified a timely date on which tolling became effective, the Agreement here set out to begin tolling the limitations period on September 23, 2019: the last date the limitations period was active. And even though the claims were otherwise time-barred at the time the parties entered into the agreement, the courts in *DiBella* and *SPPI-Somersville* found that the intent of the parties was to toll the limitations period and upheld the agreement, suggesting this Agreement should also be upheld. Like the agreements in *Dibella* and *SPPI-Somersville*, the Agreement before this Court reflects an agreement between two parties to retroactively toll a

limitations period that would otherwise have expired. Accordingly, the Court concludes that the Tolling Agreement effectively waived the Board's statute of limitations defense for claims filed by Jones on or before January 10, 2020, and therefore her claim is not time-barred.[2]

### IV. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED IN PART insofar as the claims against Dr. Stewart are DISMISSED WITH PREJUDICE and DENIED IN PART insofar as the claims against the Board remain pending. An Order consistent with this Opinion will be entered contemporaneously herewith.

**DONE** and **ORDERED** on June 23, 2020.

L. Scott Coogler
United States District Judge

199335

---

[2] Finally, the Board states—without support—that it did not authorize their former counsel to sign the Tolling Agreement, and it makes a cursory argument that the Agreement is invalid for lack of such authorization. (Doc. 7 at 4.) However, the Board cites no authority in support of this argument. "There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it . . . ." *Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). Therefore, that point will not be considered by the Court.