# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| ELEANOR M. JONES, | ) |
| Plaintiff, | ) |
| v. | ) 2:20-cv-00044-LSC |
| BESSEMER BOARD OF EDUCATION, | ) |
| Defendant. | ) |

## Memorandum of Opinion

Plaintiff Eleanor M. Jones ("Jones" or "Plaintiff") brings this age discrimination claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, against Defendant Bessemer Board of Education (the "Board" or "Defendant"). Before the Court is Defendant's Motion for Summary Judgment (Doc. 43) and Defendant's Motion to Strike (Doc. 49). The motions are fully briefed and ripe for decision. For the reasons stated below, Defendant's Motion to Strike is due to be DENIED and Defendant's Motion for Summary Judgment is due to be GRANTED.

I. **BACKGROUND**[1]

Jones, a 56-year-old female, has been employed by the Board since August 1998 in various capacities, including in her current role as a business teacher. Jones alleges that the Board discriminated against her on the basis of age when they failed to hire her for the position of Work Force Coordinator, instead promoting a younger, less qualified candidate.

On June 18, 2018, the Board posted a notice of vacancy for the position of Work-Based Learning Coordinator. (Doc. 45-5.) In that Notice of Job Vacancy, applicants were required to: (1) hold a Class B certificate or higher in CTE, (2) have two years of classroom teaching experience in CTE, (3) have taken the Functions of the Coordinator or Principals of Coordination coursework, and (4) complete one (1) hour of Child Labor Law training annually. (*Id.*) Further, Alabama Administrative Code § 290-6-1-.04(4)(a) provides that "[w]ork-based learning experiences shall be implemented according to requirements as outlined in the CTE Work-based learning

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994). The Court is not required to identify unreferenced evidence supporting a party's position. As such, review is limited to exhibits and specific portions of the exhibits specifically cited by the parties. *See Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) ("[D]istrict court judges are not required to ferret out delectable facts buried in a massive record . . .").

section of the MOA manual and local board policies." (Doc. 45-6.) The MOA manual requires that Cooperative educational programs shall be managed by a teacher-coordinator who (1) has a class B or higher Certificate, (2) has taken the required coursework, and (3) coordinates a program of study and practice that provides legal employment for students with structured work-based experiences and school-based instruction. (Doc. 45-7 at 6.)

Jones applied for the Work-Based Learning Coordinator position. At the time of her application, Jones had not taken the required coursework to be qualified for the position of Work-Based Learning Coordinator. (Doc. 45-2 at 22.) Specifically, Jones had not taken the Functions of the Coordinator or Principals of Coordination coursework. (*Id.*) However, Jones claims that the superintendent, Dr. Keith Stewart ("Dr. Stewart"), told her that she was qualified for the job and could take the required courses while holding the position. (*Id.*) Dr. Stewart submitted an affidavit in which he denies ever having this conversation with Jones. (Doc. 45-10 at 2.)

Iverson Dudley ("Dudley") facilitated the initial round of interviews for this position. (Doc. 45-1 at 15.) At least three candidates were interviewed for this job: Rebecca Caffee ("Caffee"), Barbara Dunham ("Dunham"), and Jones. (Doc. 45-10). During the initial round of interviews, Caffee scored higher than Jones. (*Id.*) Dudley rated Jones seven points lower than Caffee in the initial interview. (Doc. 46

at 3–4.) Jones complained about the initial process after overhearing a conversation where Dudley allegedly said Caffee was more relatable. (Doc. 45–3 at 13.) Jones also claimed to hear Sherry Saulsberry ("Saulsberry"), the human resources director, guarantee Dudley that Caffee would get the position. (*Id.* at 6.)

After the complaint, Dr. Stewart took over the process and conducted a second round of interviews. (*Id.* at 14–15.) During this second round of interviews, Dr. Stewart mistakenly ranked candidates outside of the maximum score allowed. (Doc. 45–10 at 4.) Realizing the mistake, Dr. Stewart then corrected the scores for all three candidates but failed to correct his score on Jones's specific sheet. (*Id.*) After corrections, Jones's combined score was 63 and Caffee's combined score was 64. (*Id.*) Dr. Stewart also testified that Caffee was the best candidate for the position and did not lack a mandatory qualification like Jones did. (*Id.* at 3.) Based on this, Dr. Stewart made his recommendation to the Board to hire Caffee and she was thereafter hired by the Board for the position of Work-Based Learning Coordinator.

Jones then filed a timely charge with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued Jones a right to sue letter, after which she had ninety days to file a complaint by September 23, 2019. Prior to this deadline, Jones and Ontario Tillman ("Tillman"), an attorney for the Board, entered into an agreement that purportedly tolled the statute of limitations while the parties pursued

settlement. After settlement negotiations failed, Jones filed this complaint on January 10, 2020.

## II. STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact[2] and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). A genuine dispute as to a material fact exists "if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (quoting *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001)). The trial judge should not weigh the evidence but determine whether there are any genuine issues of fact that should be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

In considering a motion for summary judgment, trial courts must give deference to the nonmoving party by "view[ing] the materials presented and all

---

[2] A material fact is one that "might affect the outcome of the case." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1049 (11th Cir. 2015).

factual inferences in the light most favorable to the nonmoving party." *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1213–14 (11th Cir. 2015) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). However, "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987). Conclusory allegations and "mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." *Melton v. Abston*, 841 F.3d 1207, 1219 (11th Cir. 2016) (per curiam) (quoting *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004)). In making a motion for summary judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013). Although the trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

### III.  PRELIMINARY MATTERS

The Board seeks to strike Plaintiff's response brief for failure to comply with the Court's Uniform Initial Order. (Doc. 49.) The Board argues that Plaintiff's brief failed to comply with the Court's Uniform Initial Order because it does not list the disputed and undisputed facts in the correct order. (*Id.* at 2.) The Board further argues that Plaintiff's brief does not contain specific cites to the evidentiary record upon which the disputed facts are based. (*Id.* at 2–3.) The Court notes that Plaintiff's brief does not strictly conform to this Court's Uniform Initial Order. However, the Court declines to strike Plaintiff's response brief because it appears that Plaintiff did address the facts and arguments set forth by the Board. The Board then responded to Plaintiff's statement of facts and arguments raised in their response brief despite Plaintiff's failure to comply with formatting requirements. Accordingly, Defendant's Motion to Strike is due to be DENIED.

### IV.  DISCUSSION

Jones brings an age discrimination claim against the Board under the ADEA. The ADEA makes it unlawful for employers "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). As with claims of race discrimination, a

plaintiff can prove age discrimination through direct or circumstantial evidence. *Sims v. MVM, Inc.,* 704 F.3d 1327, 1332 (11th Cir.2013) (citing *Mora v. Jackson Mem'l Found., Inc.,* 597 F.3d 1201, 1204 (11th Cir.2010)). Jones has plead no facts to suggest direct evidence of age discrimination, thus the Court must consider whether there is circumstantial evidence.

Absent direct evidence of discrimination, such as specific statements made by the employer's representatives, a plaintiff may demonstrate circumstantial evidence of disparate treatment through the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Tex. Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248 (1981). Under this framework, the aggrieved employee creates a presumption of unlawful discrimination by first establishing a *prima facie* case of discrimination.  *See Lewis v. City of Union City*, 918 F.3d 1213, 1220–21 (11th Cir. 2019) (en banc). The burden then shifts to the employer "to articulate a legitimate, nondiscriminatory reason for its actions." *Id.* at 1221 (citing *Burdine*, 450 U.S. at 253).  The burden at this stage "is exceedingly light." *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983).  It is merely a burden of production, not a burden of proof.  *Id.*

If the employer proffers a legitimate, nondiscriminatory reason, the burden returns to the employee to prove that the employer's reason is a pretext for unlawful

discrimination. *Crawford v. Carroll*, 529 F.3d 961, 976 (11th Cir. 2008). The burden of persuasion always remains on the plaintiff in an ADEA case to proffer evidence sufficient to permit a reasonable fact finder to conclude that the discriminatory animus was the "but-for" cause of the adverse employment action. *Sims*, 704 F.3d at 1332. Although the *McDonnell Douglas* framework is one way of showing discriminatory intent, it is not the only way to show discriminatory intent. *See Smith v. Lockheed–Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). "[T]he plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Id.*

    1. **McDonnell Douglas Framework**

        a. *Prima Facie* **Case**

Jones contends that she was discriminated against based on her age in violation of the ADEA when the Board chose to hire Caffee instead of her. To establish a *prima facie* case under *McDonnell Douglas*, Jones must show: "(1) that she was a member of the protected group of persons between the ages of forty and seventy; (2) that she was subject to adverse employment action; (3) that a substantially younger person filled the position that she sought or from which she was discharged; and (4) that she was qualified to do the job for which she was rejected." *Kragor v. Takeda*

*Pharmaceuticals America, Inc.,* 702 F.3d 1304, 1308 (11th Cir.2012). *See Lewis*, 918 F.3d at 1221.

The parties do not dispute that Jones satisfies the first three prongs of the *prima facie* case. The parties dispute whether Jones was qualified to do the job for which she was rejected. On June 18, 2018, the Board posted a notice of vacancy for the position of Work Based Learning Coordinator. In that Notice of Job Vacancy, applicants were required to: (1) hold a Class B certificate or higher in CTE, (2) have two years of classroom teaching experience in CTE, (3) have taken the Functions of the Coordinator or Principals of Coordination coursework, and (4) complete one (1) hour of Child Labor Law training annually. Further, Alabama Administrative Code § 290-6-1-.04(4)(a) provides that "[w]ork-based learning experiences shall be implemented according to requirements as outlined in the CTE Work-based learning section of the MOA manual and local board policies." The MOA manual requires that Cooperative educational programs shall be managed by a teacher-coordinator who (1) has a class B or higher Certificate, (2) has taken the required coursework, and (3) coordinates a program of study and practice that provides legal employment for students with structured work-based experiences and school-based instruction.

At the time of her application, Jones had not taken the required coursework to be qualified for the position of Work-Based Learning Coordinator. Specifically, Jones

had not taken the Functions of the Coordinator or Principals of Coordination coursework. Thus, Jones ultimately was not qualified for the job for which she was rejected.

However, Jones claims that Dr. Stewart told her she was qualified for the job and could take the required courses while she was holding the position. Dr. Stewart has submitted an affidavit in which he denies ever having this conversation with Jones. While this appears on its face to be a genuine issue of material fact regarding whether Jones met the qualifications, Dr. Stewart also testified that no such "provisional certification" even exists for the position of Work-Based Learning Coordinator and any statement by him otherwise would have been in error. Dr. Stewart also testified that Jones did not and does not meet the State mandated qualifications for this job. Therefore, even if true that Dr. Stewart told Jones she was qualified for the job, she was still, objectively, unqualified for the job of Work-Based Learning Coordinator. The qualifications for this job, mandated by the State of Alabama, required Jones to have taken either the Functions of the Coordinator or Principals of Coordination coursework. Jones took neither prior to applying, and still has not to this day. As Jones cannot show she was qualified for the job, she has not stated a *prima facie* case of discrimination. Accordingly, the Board's motion for summary judgment is due to be granted.

### b. Legitimate, Nondiscriminatory Reason

Even if Jones had stated a *prima facie* case of race discrimination, the Board argues that it had a legitimate, nondiscriminatory reason for hiring Caffee over Jones. The Board contends that they chose to hire Caffee over Jones because Caffee met the state required qualifications to hold the position, and because Caffee outscored Jones in the interview process. (Doc. 44 at 24.) Jones argues that no legitimate, nondiscriminatory reason exists because the required qualifications were made up and not part of the vacancy announcement. (Doc. 46 at 11.) Yet, Jones admits in other parts of her brief opposing summary judgment that the vacancy announcement contained these qualifications. (*Id.* at 5.) Regardless, choosing to hire a qualified person over a non-qualified person is a legitimate, nondiscriminatory reason. Further, choosing to hire a candidate who outscored their competitors in an interview process is also a legitimate, nondiscriminatory reason. Accordingly, the Board has satisfied its exceedingly light burden of production. As the Board has met its burden of production, the burden shifts back to Jones to demonstrate that the Board's reason was pretextual.

### c. Pretext

Jones can show pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing

that the employer's proffered explanation is unworthy of credence." *Kragor,* 702 F.3d at 1308 (quoting *Burdine,* 450 U.S. at 256.) "In other words, the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Id.* at 1308–09 (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997)). If a plaintiff produces sufficient evidence that the employer's proffered reason is merely pretextual, that evidence may sometimes be enough to preclude summary judgment in favor of the employer. *Id. at 1309*.

Jones argues that the Board's proffered reason for hiring Caffee instead of her is pretextual. (Doc. 46 at 11.) However, Jones just simply states the Board's proffered legitimate, nondiscriminatory reason is based on pretext and does not argue the specific basis for the pretext. Jones has not argued and has not presented any evidence that the Board's reason for hiring Caffee over her was pretextual. Thus, even if Jones had stated a *prima facie* case of race discrimination, the Board's motion is due to be granted because Jones failed to demonstrate the Board's reason for not hiring her was pretextual.

### 2. Convincing Mosaic

An employee may survive summary judgment if a jury may infer intentional discrimination from a "convincing mosaic" of circumstantial evidence. *Lewis v. City of Union City, Georgia*, 934 F.3d 1169, 1185 (11th Cir. 2019) (quoting *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)). An employee may establish a convincing mosaic through evidence such as "(1) 'suspicious timing, ambiguous statements…, and other bits and pieces from which an inference of discriminatory intent might be drawn,' (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Id.* (quoting *Silverman v. Bd. Of Educ. Of City of Chi.*, 637 F.3d 729, 733–34 (7th Cir. 2011)). The Eleventh Circuit has explained that "comments by non-decisionmakers do not raise an inference of discrimination, especially if those comments are ambiguous." *Mitchell v. USBI Co.*, 186 F.3d 1352, 1355 (11th Cir. 1999).

As the Eleventh Circuit has explained in regard to similarly situated employees, "a valid comparison will turn not on formal labels, but rather on substantive likenesses." *Lewis*, 918 F.3d at 1228. While the precise "similarity" is "to be worked out on a case-by-case basis," a similarly situated comparator "will have engaged in the same basic conduct (or misconduct) as the plaintiff"; "will have been subject to the same employment policy"; "will ordinarily (although not

invariably) have been under the jurisdiction of the same supervisor"; and "will share the plaintiff's employment or disciplinary history." *Id.* at 1227–28. Jones has not painted a "convincing mosaic" of discrimination from circumstantial evidence. Jones bears the burden of creating "an inference of discriminatory intent" as to her employer's conduct. *Lewis*, 934 F.3d at 1185. She has offered no evidence to create such an inference regarding the Board's decision to hire Caffee over her.

Jones argues that numerous statements and actions by Dudley and Dr. Stewart "weave a web of strong circumstantial evidence of discrimination." (Doc. 46 at 13–14.) Here, Dudley was not the final decisionmaker. As Jones admitted in her deposition, the superintendent made the final recommendation to the Board as to who to hire. (Doc. 45–3 at 6.) Dr. Stewart was the superintendent. Thus, any comments made by Dudley do not raise an inference of discrimination as he was a non-decisionmaker. *Mitchell*, 186 F.3d at 1355. Jones notes that Dudley also rated her seven points lower than Caffee in the initial interview. However, Jones presents no evidence that this was because of her age. Jones also argues that no one ever told her she was not qualified for the position of Work-Based Learning Coordinator. Similarly, Jones also claims that discrimination should be inferred from the Board only claiming she was unqualified after Dr. Stewart had already told her she could take the required coursework while holding the position. However, as discussed

above, Jones was objectively not qualified for the job. Further, Jones has not shown systematically better treatment of similarly situated employees. Jones points to Caffee as a comparator. However, Caffee is not a proper comparator to Jones because Caffee is not similarly situated. As discussed above, Caffee has taken the required coursework to be eligible for the job of Work-Based Learning Coordinator. Jones has not.

Also, as mentioned above, Jones has not offered any evidence that the Board's proffered reason for Caffee being hired instead of her was pretextual. Accordingly, Jones has not met her burden of creating "an inference of discriminatory intent" and this Court finds that Jones has not presented a "convincing mosaic" of age discrimination as to survive a motion for summary judgment. Thus, the Board's motion is also due to be granted as to the ADEA claim under the convincing mosaic standard.

### 3. Cat's Paw Theory of Liability

When a claim involves an adverse employment action that occurs based on a biased recommendation by a party without decision making authority, a plaintiff can establish liability under the cat's paw theory. *Duncan v. Alabama*, 734 Fed. Appx. 637, 640 (11th Cir. 2018) (citing *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1331-32 (11th Cir. 1999)). Under that theory, if the decision-making party followed the

biased recommendation without independently investigating the complaint—essentially acting as a rubber stamp of the biased recommendation—then the recommender's discriminatory animus is imputed to the decisionmaker. *Id.* However, when an employer makes an effort to independently investigate before making an adverse employment decision, it should not be held liable for another employee's hidden discriminatory motives. *Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1249–50 (11th Cir. 1998). The Eleventh Circuit extended the cat's paw doctrine to ADEA cases (which requires proof of but-for causation), albeit with an important modification of the causation standard. *Sims*, 704 F.3d 1327. In *Sims*, the court held that the plaintiff could only prevail in his ADEA case if his recommending supervisor's discriminatory animus was a but-for cause of, "or determinative influence on," the decision-maker's ultimate adverse employment decision. *Id.* at 1336–37.

Jones argues that Dr. Stewart acted as a mere cat's paw for Dudley's discriminatory animus. (Doc. 46 at 14.) Accordingly, Jones must prove that Dudley's discriminatory animus was a but-for cause of, "or determinative influence on," Dr. Stewart's decision to hire Caffee instead of her. *Sims*, 704 F.3d at 1336–37. Here, Jones cannot satisfy that burden as she has presented no evidence that Dudley had any influence on the decision-making process. Instead, the evidence shows that Dr.

Stewart conducted a completely separate interview process and determined independently that Caffee was the best candidate for the position of Work-Based Learning Coordinator.

Dudley facilitated the initial round of interviews for this position. During the initial round of interviews, Caffee scored higher than Jones. After overhearing a conversation where Dudley allegedly said Caffee was more relatable, Jones complained about the initial process. Jones also claimed to hear Saulsberry guarantee Dudley that Caffee would get the position. Dr. Stewart then took over the process and conducted a second round of interviews. During this second round of interviews, Dr. Stewart mistakenly ranked candidates outside of the maximum score allowed. Realizing the mistake, Dr. Stewart then corrected the scores for all three candidates but failed to correct his score on Jones's specific sheet. After corrections, Jones's combined score was 63 and Caffee's combined score was 64. Dr. Stewart also testified that Caffee was the best candidate for the position and did not lack a mandatory qualification like Jones did. Based on this, Dr. Stewart made his recommendation to the Board to hire Caffee and she was thereafter hired by the Board for the position of Work-Based Learning Coordinator.

Thus, Dr. Stewart conducted his own completely separate interview process. The result of that process was Caffee being hired for the position. Nothing in second

interview process was affected by Dudley. In fact, Dudley stated that "Dr. Stewart interviewed and dealt with the entire second round of interviews" without him. (Doc. 45–1 at 15.) While Jones may be upset that she was not selected for the position, she has presented no evidence that any alleged discriminatory animus by Dudley was a but-for cause or a "determinative influence" on Dr. Stewart's decision. Accordingly, the Board's motion for summary judgment is also due to be granted under a cat's paw theory of liability.

### 4. Statute of Limitations

The Board argues that summary judgment is also appropriate because Jones's claims are time barred and "there are no facts to support the formation of an agreement between the Plaintiff and Defendant to toll any statute of limitations." (Doc. 44 at 17.) Jones filed a timely charge with the EEOC. On June 25, 2019, the EEOC issued Jones a right to sue letter, after which Jones had ninety days to file a complaint by September 23, 2019. Prior to this deadline, Jones and Tillman, an attorney for the Board, entered into an agreement that purportedly tolled the statute of limitations while the parties pursued settlement. After settlement negotiations failed, Jones filed a complaint on January 10, 2020. Because, the Court concludes that summary judgment is appropriate on the merits, it need not decide whether Jones's claims are time barred.

V.  **CONCLUSION**

For the reasons stated above, Defendant's Motion to Strike (Doc. 49) is due to be DENIED and Defendant's Motion for Summary Judgment (Doc. 43) is due to be GRANTED. An Order consistent with this Opinion will be entered contemporaneously herewith.

**DONE** and **ORDERED** on November 4, 2021.

L. Scott Coogler
United States District Judge

206770